# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><sub>The person of Andrew P. Sprecher (DOB: XX/XX/1979).</sub><br><sub>The property of 823 N. Second Street, Unit 706, Milwaukee, Wisconsin.</sub><br><sub>Property further described in Attachment A.</sub><br><sub>Any on-site storage unit provided to tenants of the building or that is accessible to Andrew Sprecher.</sub><br><sub>Extraction of evidence from those locations and the person.</sub><br><sub>Evidence further described in Attachment B.</sub> | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.23-1821M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10/30/2023 _____ *(not to exceed 14 days)*

xx❏ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 10/16/2023 @ 3:56 p.m. _____

*[signature]*
*Judge's signature*

City and state:      Milwaukee, WI _____          Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

1.        The person of Andrew P. Sprecher (DOB: XX/XX/1979)

2.        The property to be searched is 823 N. Second Street, Unit 706, Milwaukee, Wisconsin. The aforementioned property is further described as an approximately ten story apartment building located on the west side of N. 2nd Street at N. Plankinton Avenue.  The structure is red brick, and the front door is facing N. 2nd street. The structure has an outdoor parking lot directly to the south of the building.  There is a sign which reads "823" prominently displayed near the front door.  Unit 706 is on the 7th floor of the building and is marked with the numbers "706" affixed to the door.

3.        Any on-site storage unit provided to tenants of the building or that is accessible to Andrew Sprecher.



*Photo of 823 N. 2nd Street, Milwaukee, Wisconsin*

## ATTACHMENT B

*Property to be seized*

1.      Controlled substances or material used for growing or manufacturing controlled substances;

2.      Firearms, ammunition, firearm accessories, documents or information related to the purchase, sale, or transfer of firearms, ammunition, firearms accessories;

3.      Photographs or other documents related to firearms, ammunition, firearms accessories, or the use or possession of controlled substances;

4.      ATF Form 4473s, firearms, firearm boxes, bipods, tripods, upper receivers, receipts and any records related to firearms, firearms accessories, ammunition, financial documents that transfer of proceeds of the above schemes, computers, electronics capable of communication, and cellphones such as:

     a.   lists of contacts and any identifying information;

     b.   photographs, videos, or other media storage connected to firearms;

     c.   types, amounts, and prices of firearms purchased/sold;

     d.   any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

     e.   all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

5.      any and all financial records connected to the purchase/sale of firearms;

6.      Cellphones, computers, and all media storage devices that may hold documentation regarding firearm or ammunition purchases/sales and customers;

2

7.	Any and all financial records connected to the purchase/sale of firearms, and any correspondence between suspects and other firearms sellers and/or purchasers;

8.	Proceeds of firearms trafficking activities or sale or drug trafficking activities, including United States currency;

9.	All bank records, checks, credit card bills, account information, and other financial records;

10.	Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearms trafficking activities or the sale of controlled substances;

11.	Documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm trafficking activities;

12.	Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

13.	Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data;

14.	Indicia of occupancy, residency or ownership of the premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys;

3

15.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

16.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

17.     All records relating to violations of 18 U.S.C. § 922(g)(3) (drug user in possession of a firearm) and 18 U.S.C. § 922(a)(6) (false statement to a federal firearms licensee) involving Andrew Sprecher, including:

a.     Records and information relating to a conspiracy to violate the laws of the United States, including the scope, manner, means, acts in furtherance, and identity of any co-conspirators;

b.     Records and information relating to the identity or location of the suspect;

c.     Records and information relating to communications with Internet Protocol addresses;

d.     Records and information relating to the crimes referenced in Attachment B

e.     Records and information relating to intent or state of mind.

18.     Computers or storage media used as a means to commit the violations described above;

4

19.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

5

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

20. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

21. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

6

22.     The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>The person of Andrew P. Sprecher (DOB: XX/XX/1979).<br>The property of 823 N. Second Street, Unit 706, Milwaukee, Wisconsin.<br>Property further described in Attachment A.<br>Any on-site storage unit provided to tenants of the building or that is accessible to Andrew Sprecher.<br>Extraction of evidence from those locations and the person.<br>Evidence further described in Attachment B. | )<br>)<br>)<br>)<br>)<br>)    Case<br>     No.23-1821M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (g)(3) | Drug User in Possession of a Firearm |
| 18 U.S.C. § 922(a)(6) | Providing False Information to a Federally Licensed Firearms Dealer |

The application is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANK RUTTER    Digitally signed by FRANK RUTTER
Date: 2023.10.13 11:57:25 -05'00'

*Applicant's  signature*

Frank Rutter, Special Agent, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ TELEPHONE _____ *(specify reliable electronic means).*

Date: 10/16/2023

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, a residential dwelling, and a person, and the extraction of evidence from those locations and that person described in Attachment B.

2.      I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015.  As an ATF Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

3.      Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

4.      I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as

opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

5.  Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

6.  I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

7.  I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

8.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is

2

intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

9. There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively 18 U.S.C. § 922 (g)(3), drug user in possession of a firearm.

10. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11. Based upon the evidence gathered to date, I submit that there is probable cause to believe that Andrew Sprecher (DOB XX/XX/1979) has violated Title 18, United States Code, Section 922(g)(3) (drug user in possession of a firearm) and Title 18, United States Code, Section § 922(a)(6) (providing false information to a federally licensed firearms dealer). I further submit that there is a probable cause that evidence of these criminal violations will be found at the locations to be searched, as further described below and in Attachment A.

## LOCATIONS AND PERSON TO BE SEARCHED

12. This warrant seeks authority to search the following location and person, more fully described in Attachment A, and to seize the evidence described in Attachment B:

   a. Andrew Sprecher's residence ("PREMISES"): the apartment unit located at 832 N. 2nd Street, Apartment 706, in Milwaukee, Wisconsin.

   b. The person of Andrew Sprecher.

3

**PROBABLE CAUSE**

13.     On September 22, 2023, your affiant spoke with United States Secret Service (USSS) Special Agent (SA) Breyen Canfield about a building which had been recently struck by gunfire in downtown Milwaukee, Wisconsin.  SA Canfield explained that the tenant of the building which had been struck by gunfire was the Republican National Convention.  USSS requested the assistance of ATF while investigating the matter alongside the Milwaukee Police Department (MPD).

14.     On Monday, September 18, 2023, at around 10:00 a.m., tenants of the fifth floor of the Associated Bank Building located at 111 E. Kilbourn Avenue in Milwaukee, Wisconsin, observed glass on the desk and floor of an office space.  They also observed a hole in the wall which was believed to be a bullet hole.  The Milwaukee Police Department was notified, and law enforcement officers began investigating the incident.  It was subsequently learned that the office space was being leased by the Republican National Convention.  It was established that office cleaners were last in the space on the evening of Friday, September 15, 2023, at approximately 10:00 p.m., and there were no issues observed at that time.  The space was unoccupied from then until Monday, September 18, 2023, around 10:00 a.m., when tenants observed the damage.  MPD later extracted a bullet fragment from the wall and SA Rutter subsequently observed the recovered bullet fragment which appeared consistent with that of a pistol caliber.

15.     The office space faces west and looks out over the Milwaukee River.   MPD determined there were two plausible buildings from which the gunfire could have come.  The first being a law office at 840 N. Plankinton Avenue and the other being Riverside Lofts at 823

4

N. 2nd Street.  A representative from the law firm explained they were unaware of any recent gunfire in the area and their building had security cameras.  A subsequent interview with the law firm building manager revealed no one accessed their building over the entire weekend. MPD determined the better lead between the two buildings was that of Riverside Lofts. The office space looks directly at Riverside Lofts located at 823 N. 2nd Street, in Milwaukee, Wisconsin.

16.     MPD canvased Riverside Lofts and attempted interviews with residents on several of the higher-level floors of the building.  The initial complaint and MPD's investigation is documented under MPD Incident Report #23-261-0551.  No interviewed resident mentioned hearing gunfire over the weekend and the building management explained no tenant had access to the rooftop.

17.     On September 22, 2023, SA Canfield and other investigators met with members of the Milwaukee County Sheriff's Office (MCSO) sniper team.  MCSO sniper team members measured the height of the bullet hole in the wall, the height of the bullet hole in the window, and the distance between the two points.  The team directed a laser from the wall, at the proper angle, and through the hole in the window.  They were able to see the laser hit the Riverside Lofts building at 823 N. 2nd Street.  Given the effect of the window on the path of the bullet, the sniper team narrowed down the most likely area from which the round was fired to be on the 7th, 8th, or 9th floors of the Riverside Lofts.

18.     A query of recent MPD CAD calls for service at Riverside Lofts revealed G.L. called 911 on September 20, 2023, to report on the 7th floor she heard a female screaming "help, help, someone call the police."  During a subsequent interview with law enforcement, G.L.

5

described who she thought was a black male wearing red/black shirt near a white female who had pink hair. G.L. explained they were standing outside of apartment #706. G.L. explained the female walked towards the stairwell and G.L. heard a male voice say they were going to shoot someone. G.L. did not report whether the male voice was that of the black male or someone else.

19. MPD and SA Canfield were able to identify the tenant of apartment 706 as Andrew P. Sprecher (XX/XX/1979). SA Canfield determined Sprecher had a disorderly conduct conviction involving a firearm in 2021 out of Dane County, Wisconsin (Case 2021CM000947). Your affiant is aware Apartment 706 of Riverside Lofts is within the target area of the suspected shooting incident. Based upon interviews and other evidence, some of which is detailed below, law enforcement has since learned that Sprecher is a user of illegal controlled substances, specifically marijuana.

20. A query of Wisconsin Department of Motor Vehicle records revealed Sprecher's address of record is 823 N. 2nd Street, Apartment 706, in Milwaukee (PREMISES).

21. On September 25, 2023, a telephonic phone interview was conducted with Sprecher's ex-girlfriend, G.V., who stated they were previously in a romantic relationship for approximately seven years and had lived together in Madison, Wisconsin. G.V. explained that Sprecher had a hydroponic marijuana grow operation in their home that involved the use of barrels filled with rocks. G.V. stated Sprecher sold and consumed the marijuana he grew. G.V. explained Sprecher got his first firearm in approximately 2017 or 2018 following a conflict with a co-worker. G.V. described how Sprecher makes veiled threats including statements about

6

being dangerous and that he might hurt somebody.  G.V. explained Sprecher abuses medications which were prescribed to treat bipolar and social anxiety disorders.  Sprecher has told G.V. in the past that some people deserve to die and Sprecher has spoken of wanting to kill people.  G.V. explained Sprecher remains angry at law enforcement following his Disorderly Conduct incident in Madison and has made threats of suicide by cop.  G.V. identified the PREMISES as the address which Sprecher moved to after they ended their relationship.  G.V. explained Sprecher was a daily marijuana user for the entirety of their relationship, but G.V. has not seen him use marijuana following their breakup.

22.     On September 26, 2023, investigators attempted to interview Sprecher at his apartment, the PREMISES.  Sprecher stated he was the only person who resided in the PREMISES.  Sprecher provided inconsistent statements surrounding his activity over the weekend involving the shooting incident.   Sprecher explained he did not hear any gunshots over the weekend.  During the interview, Det. Osmanski observed two large plastic barrels and additional plastic containers along the wall inside Sprecher's apartment.

23.     On September 27, 2023, MPD conducted a recorded telephonic interview with Andrew Sprecher's sister, J.E.  J.E. explained that she went to Sprecher's apartment before he was released from the mental hospital in September 2023.   Records indicated Sprecher was released on September 8, 2023.  J.E explained she removed two loaded firearms from Sprecher's residence during this visit.  J.E. described them as a .357 and another revolver.  J.E. related Sprecher came back from the mental hospital in worse shape than before he went in.  J.E.

7

described how Sprecher always talks about wanting to kill an ex-girlfriend. J.E. told

investigators she believed he would kill this ex-girlfriend and act on his impulses.

24.     J.E. read a text message to investigators that she received from Sprecher on

September 20, 2023. The message read, "I wish I had good news for you, I bought a fucking

Glock the day after you wisely took my firearms. I don't know what to say, I appreciate your

help, at this point I am beyond saving."

25.     Affiant is aware a follow up interview was completed with J.E. during which she

explained Sprecher is currently and has been a daily marijuana user for years.

26.     Records reflect that on September 10, 2023, Sprecher initiated the purchase of a

Glock pistol (Model 26, 9mm, bearing serial no. ADYU734) from Brew City Shooter's Supply, a

federally licensed firearms (FFL) dealer, located at 2339 S. 43rd Street in Milwaukee, Wisconsin.

During this purchase, Sprecher had to complete ATF Form 4473, which is a firearm transaction

record that is required by federal law. This document contains a wealth of information including,

but not limited to, the purchaser's name, address, and a signature attesting all the information

they provided is true, correct and complete. Additionally, this signature attests that the purchaser

is aware lying on the form is a federal felony.

27.     On the form, Sprecher provided his address as the PREMISES.

28.     It should be noted, the background check related to the aforementioned firearm

purchase yielded a "delayed" response, meaning the results were inconclusive and more time

was needed before a determination could be made. If no response is received within 3 additional

business days, the FFL can legally transfer the firearm. The firearm was later transferred to

8

Sprecher on September 11, 2023, after the results of the background check resulted in a "proceed."

29.     Sprecher answered "no" to question 21 (f) which stated, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside."  Sprecher filled out the ATF Form 4473 on September 10, 2023, and took possession of the firearm on September 11, 2023, at which time he again affixed his signature attesting that his answers were still true, correct, and complete.

30.     In February 2022, Sprecher was convicted of Disorderly Conduct in Dane County, Wisconsin, and in April 2022 a firearm was ordered to be released to Sprecher.  The subject firearm was a Ruger .357 magnum revolver.

31.     Details of the case revealed that the arrest stemmed from an alleged stalking incident involving Sprecher's ex-girlfriend, G.V., who reported that she was terrified of what Sprecher was capable of doing to her since he has nothing to lose.  G.V. had explained she knew Sprecher to be in possession of numerous handguns and rifles.  When asked if she believed Sprecher was capable of killing her, she began to cry and said that answering that question was too difficult.  A domestic violence danger assessment was completed, and G.V. was provided with the necessary information to obtain a temporary restraining order.  When officers later located Sprecher on his porch, he denied stalking his ex-girlfriend, but was in possession of concealed .357 magnum revolver.

9

32.     Milwaukee Police Department CAD history for 911 calls involving Sprecher revealed the following:

   a)  August 11, 2023:  Caller states she is concerned that her brother, identified in the call as Andrew Sprecher at PREMISES, may harm others. He sent her a text "stating he is going to his HR department fully loaded and that people will take him serious but will not shoot up the place. Caller states he (Sprecher) was at home at the moment, stated he is bipolar, unsure if he takes meds. States he has made threats/statements in the past but nothing this serious. Caller states the male (Sprecher) previously got rid of his guns but has gotten a new one. Caller states the brother (Sprecher) was recently voluntarily hospitalized because he felt that he was a danger to self and others, states her brother (Sprecher) is an alcoholic.

   b)  August 31, 2023: Suicide hotline states male subject, identified in the call as Andrew Sprecher at the PREMISES, was chatting with them stating he is suicidal and homicidal, states he doesn't feel safe to be alone or around people, Sprecher told the representative he has a firearm on him currently, Magnum 357, stated he would put it away when the police arrive to help him.

   c)  September 2, 2023: Suicide hotline call during which Sprecher reported that he was armed and an immediate threat to himself and others.   Sprecher did not say what kind of weapon he has.  Sprecher called from telephone number 608-213-3251.

10

   i. On that date, MPD responded to 823 N. 2ⁿᵈ Street

    (PREMISES) and made contact with Sprecher who stated he

    did not "feel right" and that he may harm himself.  Sprecher

    was voluntarily conveyed to the Milwaukee Mental Health

    Emergency Center (MHEC).  While at MHEC, Sprecher made

    statements about wanting to leave and that he was going to kill

    "some people" before killing himself.  Sprecher communicated

    he had been told the problem with his brain was unfixable and

    he had no reason to live.  Sprecher requested to be discharged

    and stated he has three guns at home and was talking about

    killing other before killing himself.  Practitioners attempted to

    place a "hold" on Sprecher, and called MPD.  At some point

    thereafter, Sprecher was released from the MHEC.  Your

    affiant is aware Officer Kulcinski documented that Sprecher

    posed an immediate threat to himself and others in that he may

    shoot and kill.

  33. On October 5, 2023, SA Rutter located a publicly visible Facebook page

displaying vanity name "Goose Egg Sprecher" and URL

https://www.facebook.com/andrewsprecher.  SA Rutter compared a photograph from the

aforementioned Facebook page with a driver's license image of Sprecher and found the images

to be consistent and to represent the same individual.

34.     SA Rutter observed numerous pictures of what appeared to be marijuana posted to Sprecher's Facebook page.  Additionally, SA Rutter located an image of what appeared be a Kel-Tec KSG 12-gauge shotgun.  Two of images observed on Sprecher's Facebook page are included below:

 

35.     Based on the investigation thus far, there is probable cause to believe that evidence associated with violations of 18 U.S.C. § 922(g)(3) (drug user in possession of a firearm) and 18 U.S.C. § 922(a)(6) (providing false information to a federally licensed firearms dealer) will be located within the PREMISES and on the person of Andrew Sprecher.

36.     Further, affiant is aware, based on training, experience, and information provided from other members of law enforcement, that evidence of illegal firearm possession is commonly found on electronic devices such as computers and cellular phones. Affiant is aware that those engaged in the sale or possession of firearms often take, or cause to be taken, photographs, video, and other visual depictions of firearms, and typically keep and maintain these photographs, video,

12

and other visual depictions in cellular phones located on their person or on other mediums such as computers and hard drives in areas where they have exercised dominion and control.

37.     Affiant is aware that it is common for those who possess and traffic firearms, to purchase and maintain ownership of firearms for long periods of time.  Firearms are a commodity that are often held for long periods of time.

38.     Affiant is aware that cellular phones can be used to store information including text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, videos, GPS and other location information, internet search history, and other data.

## TECHNICAL TERMS

39.     Based on my training and experience, I use the following technical terms to convey the following meanings:

1. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.
2. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.
3. Storage medium: A storage medium is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

13

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

40.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

41.     *Probable cause.*  I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   i.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   ii.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   iii. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

14

iv. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

42. *Forensic evidence.* As further described in Attachment B, these applications seek permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrants, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

i. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

ii. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or

15

exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

iii.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

iv.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

16

information necessary to understand other evidence also falls within the scope of the warrants.

    v.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

43.   *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrants. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    i.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrants call for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrants can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    ii.  Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application

17

software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    iii.   Variety of forms of electronic media. Records sought under these warrants could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

44. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrants and would authorize a later review of the media or information consistent with the warrants. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrants.

## CONCLUSION

45. I submit that this affidavit supports probable cause for a warrant to search the PREMISES and person of Andrew Sprecher, described in Attachment A, and seize the items described in Attachment B.

# ATTACHMENT A

*Property to be searched*

1.　　　The person of Andrew P. Sprecher (DOB: XX/XX/1979)

2.　　　The property to be searched is 823 N. Second Street, Unit 706, Milwaukee, Wisconsin. The aforementioned property is further described as an approximately ten story apartment building located on the west side of N. 2nd Street at N. Plankinton Avenue.  The structure is red brick, and the front door is facing N. 2nd street. The structure has an outdoor parking lot directly to the south of the building.  There is a sign which reads "823" prominently displayed near the front door.  Unit 706 is on the 7th floor of the building and is marked with the numbers "706" affixed to the door.

3.　　　Any on-site storage unit provided to tenants of the building or that is accessible to Andrew Sprecher.



*Photo of 823 N. 2nd Street, Milwaukee, Wisconsin*

## ATTACHMENT B

*Property to be seized*

1. Controlled substances or material used for growing or manufacturing controlled substances;

2. Firearms, ammunition, firearm accessories, documents or information related to the purchase, sale, or transfer of firearms, ammunition, firearms accessories;

3. Photographs or other documents related to firearms, ammunition, firearms accessories, or the use or possession of controlled substances;

4. ATF Form 4473s, firearms, firearm boxes, bipods, tripods, upper receivers, receipts and any records related to firearms, firearms accessories, ammunition, financial documents that transfer of proceeds of the above schemes, computers, electronics capable of communication, and cellphones such as:

   a. lists of contacts and any identifying information;

   b. photographs, videos, or other media storage connected to firearms;

   c. types, amounts, and prices of firearms purchased/sold;

   d. any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

   e. all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

5. any and all financial records connected to the purchase/sale of firearms;

6. Cellphones, computers, and all media storage devices that may hold documentation regarding firearm or ammunition purchases/sales and customers;

2

7.      Any and all financial records connected to the purchase/sale of firearms, and any correspondence between suspects and other firearms sellers and/or purchasers;

8.      Proceeds of firearms trafficking activities or sale or drug trafficking activities, including United States currency;

9.      All bank records, checks, credit card bills, account information, and other financial records;

10.     Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearms trafficking activities or the sale of controlled substances;

11.     Documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm trafficking activities;

12.     Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

13.     Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data;

14.     Indicia of occupancy, residency or ownership of the premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys;

3

15. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

16. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

17. All records relating to violations of 18 U.S.C. § 922(g)(3) (drug user in possession of a firearm) and 18 U.S.C. § 922(a)(6) (false statement to a federal firearms licensee) involving Andrew Sprecher, including:

   a. Records and information relating to a conspiracy to violate the laws of the United States, including the scope, manner, means, acts in furtherance, and identity of any co-conspirators;

   b. Records and information relating to the identity or location of the suspect;

   c. Records and information relating to communications with Internet Protocol addresses;

   d. Records and information relating to the crimes referenced in Attachment B

   e. Records and information relating to intent or state of mind.

18. Computers or storage media used as a means to commit the violations described above;

4

19.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

5

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

20.  As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

21.  The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

6

22. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

Case 2:23-mj-01821-NJ   Filed 10/16/23   Page 35 of 35   Document 1